UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH D. ESELOMA, | ) | No. CV 05-7253-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.**

**PROCEEDINGS**

     Plaintiff filed this action on October 11, 2005, seeking review of the Commissioner's denial of his application for Disabled Adult Child Benefits and Supplemental Security Income.  The parties filed a Consent to proceed before the undersigned Magistrate Judge on October 31, 2005.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 26, 2006, that addresses their position concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

**II.**

**BACKGROUND**

Plaintiff was born on October 19, 1981.  [Administrative Record ("AR") at 456, 474-75.] He has attended high school through the eleventh grade.  [AR at 144, 475.]  He has no relevant past work experience. [AR at 17.]

On July 9, 2002, plaintiff filed an application for Supplemental Security Income payments and Disabled Adult Child Benefits.[1] [AR at 456-57.] Plaintiff alleges that he has been unable to work since June 2, 2001, due to diabetes and low back pain.  [AR at 17, 138, 456.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on March 8, 2004, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 471-87.] Testimony from a vocational expert was obtained through written interrogatories. [AR at 164-65.]  On September 23, 2004, the ALJ determined that plaintiff is able to perform a significant range of light work,[2] and therefore was not disabled.  [AR at 15-21.]  When the Appeals Council denied review on July 7, 2005, the ALJ's decision became the final decision of the Commissioner.  [AR at 6-8.]

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

---

[1]   The parties note in the Joint Stipulation that while plaintiff's application for Disabled Adult Child Benefits was not included in the Administrative Record, the Administrative Law Judge acknowledged receipt of the application in the hearing decision.  Joint Stipulation ("Joint Stip.") at 2, n.1.

[2]   Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  The ALJ also concluded that (1) plaintiff is capable of sitting/standing/walking for six hours out of an eight hour day with normal breaks; (2) he should perform no repetitive bending, stooping, squatting, crouching, crawling, kneeling, or prolonged walking; (3) he should not work at heights, and should perform no close or fine visual work; and (4) that his work should be unskilled and entry level, and  involve routine and repetitive tasks. [AR at 17.]

1 evidence or if it is based upon the application of improper legal standards. <u>Moncada v. Chater</u>,

2 60 F.3d 521, 523 (9th Cir. 1995); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

3       In this context, the term "substantial evidence" means "more than a mere scintilla but less

4 than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

5 adequate to support the conclusion." <u>Moncada</u>, 60 F.3d at 523; <u>see also Drouin</u>, 966 F.2d at

6 1257. When determining whether substantial evidence exists to support the Commissioner's

7 decision, the Court examines the administrative record as a whole, considering adverse as well

8 as supporting evidence. <u>Drouin</u>, 966 F.2d at 1257; <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th

9 Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

10 must defer to the decision of the Commissioner. <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>,

11 53 F.3d 1035, 1040-41 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

12

13 **IV.**

14 **THE EVALUATION OF DISABILITY**

15       Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

16 to engage in any substantial gainful activity owing to a physical or mental impairment that is

17 expected to result in death or which has lasted or is expected to last for a continuous period of

18 at least twelve months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

19

20 **A.   THE FIVE-STEP EVALUATION PROCESS**

21       The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

22 whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821,

23 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996). In the first step, the Commissioner must

24 determine whether the claimant is currently engaged in substantial gainful activity; if so, the

25 claimant is not disabled and the claim is denied. <u>Id.</u> If the claimant is not currently engaged in

26 substantial gainful activity, the second step requires the Commissioner to determine whether the

27 claimant has a "severe" impairment or combination of impairments significantly limiting his ability

28 to do basic work activities; if not, a finding of nondisability is made and the claim is denied. <u>Id.</u>

3

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.[3] [AR at 20.] At step two, the ALJ concluded that plaintiff has a severe impairment resulting from insulin-dependent diabetes mellitus ("IDDM") with visual end organ damage. [AR at 17.] At step three, the ALJ found that plaintiff's impairment does not meet or equal the requirements of any of the impairments in the Listings. [AR at 17, 20.] The ALJ determined at step four that plaintiff has no past relevant work. [Id.] At step five, the ALJ concluded that based on plaintiff's residual functional capacity to perform a "significant range of light work," there are a significant number of jobs in the national economy that he can perform.

_____

[3]     The ALJ also determined that plaintiff meets the requirements for Disabled Adult Child Benefits under section 202(d) of the Social Security Act. [AR at 17.]

1  [AR at 20.]  Accordingly, the ALJ found plaintiff not disabled and thus not entitled to benefits. [AR
2  at 20-21.]

4                                              **V.**
5                                   **THE ALJ'S DECISION**

6         Plaintiff contends that the ALJ failed to present clear and convincing reasons for rejecting
7  his testimony.  Joint Stipulation ("Joint Stip.") at 3-5.  For the reasons discussed below, the Court
8  respectfully disagrees, and affirms the ALJ's decision.

9  **THE ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY**

10        During the administrative hearing, plaintiff testified that his diabetes prevents him from
11  working because "[i]t leaves too much stress upon [his] eyes and [his] body and [he] can't take
12  it."  [AR at 477.] According to plaintiff, he has been a diabetic and has required insulin since he
13  was eight years old, and began experiencing eye problems when he was around sixteen. [AR at
14  477-78.] He has suffered from eye hemorrhages, and has had surgery on both eyes.[4] [AR at 478-
15  79.] His vision is currently clear, but he cannot read small print.  He also claims that he sees "little
16  black dots." [AR at 478-79.] Plaintiff testified that he takes his medication daily and tries to follow
17  his diet. [AR at 480.] He also uses eyedrops numerous times per day. [AR at 482.]  He does not
18  need help bathing or dressing. [AR at 481.] When asked how he spends his days, plaintiff
19  responded that he "[s]it[s] at home and take[s] care of [his] eye"; in order to protect his eyesight,
20  he "watch[es] as little TV as [he] can." [AR at 481.]

21        In addition to eye complications, plaintiff testified that about every three months he suffers
22  from "excruciating pain" in his kidney that lasts for "a good two or three weeks." [AR at 482.] He
23  suffers from "periodic" numbness in his feet that occurs about "[o]nce every six months," and from

---

26      4   Patient underwent an operation on his right eye on November 3, 2003, which involved a
27  "[p]ars plana vitrectomy, membrane peeling and delamination, [and] endolaser panretinal
    photocoagulation for a total number of approximately 1400 spots." [AR at 340.]  On March 1,
28  2004, plaintiff had an operation on his left eye which involved a "[p]ars plana vitrectomy, endolaser
    panrentinal photocoagulaiton, air fluid exchange, [and] membrane peeling." [AR at 398.]

1    numbness in his hands on "cold winter days." [AR at 483.]  He also experiences occasional

2    swelling in his feet that sometimes causes him to lose his balance. [Id.]

3         Plaintiff claims that the ALJ improperly rejected the above testimony.  Plaintiff's contentions

4    primarily rest on the argument that the ALJ failed to take into account the increasing severity of

5    his visual impairments, and improperly relied on "outdated" evidence that did not reflect the later

6    deterioration of his eye complications.  According to plaintiff, the ALJ's reasons for rejecting his

7    testimony "fail to demonstrate in a clear and convincing fashion that [plaintiff's] testimony before

8    the ALJ is suspect at all."  Joint Stip. at 5.

9         Because  plaintiff  produced  medical  evidence  of  an  underlying  impairment  that  is

10   reasonably likely to cause the alleged symptoms, medical findings are not required to support their

11   alleged severity.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social

12   Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present

13   clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant

14   lacks credibility cannot be premised wholly on a lack of medical support for the severity of his

15   pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective

16   physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb.

17   27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

18        The ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or

19   (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030,

20   1040 (9th Cir. 2003).  The following factors may be considered in weighing a plaintiff's credibility:

21   (1) his reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between

22   the plaintiff's testimony and his conduct; (3) his daily activities; (4) his work record; and (5)

23   testimony from physicians and third parties concerning the nature, severity, and effect of the

24   symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see

25   also 20 C.F.R. §§ 404.1529(c), 416.929(c).  "General findings are insufficient."   Reddick v.

26   Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ must state which testimony is not credible

27   and identify the evidence that undermines the plaintiff's complaints.  Id.; Benton, 331 F.3d at

28

1   1041.  If properly supported, the ALJ's credibility determination is entitled to "great deference."

2   Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

3          In this case, the ALJ expressly considered plaintiff's testimony, specifically that plaintiff has

4   diabetes with "visual problems [that required] eye surgeries" and that "his hands and feet become

5   numb, he gets tired, his feet swell, and he has kidney pain periodically." [AR at 19.] In reaching

6   the conclusion that plaintiff is capable of a range of light work, the ALJ found that plaintiff's

7   allegations were "not inconsistent with these findings." [Id.]  Based on this express language, it

8   appears that plaintiff's subjective allegations were not in fact rejected.  Rather, the ALJ apparently

9   determined that even if plaintiff's hearing testimony is taken as true, a more restrictive residual

10  functional capacity is not warranted. [See id.]

11         For the following reasons, the Court concludes that the ALJ properly concluded that

12  plaintiff's testimony is "not inconsistent" with the light work determination.  The ALJ noted that

13  plaintiff suffers from visual complications that ultimately required eye surgeries, and which limited

14  him to no close or fine visual work.  [AR at 17.]  Given plaintiff's testimony in March, 2004 -- well

15  after the August, 2003, deterioration in his impairment alleged by plaintiff -- that, except for seeing

16  small black dots, his vision is for the most part clear and prevents him only from reading fine print,

17  he has not made a showing that his visual impairment necessitates a more severe restriction than

18  what was set forth by the ALJ.  While plaintiff is correct that his eye problems significantly

19  worsened to the point that he required operations, his allegations do not indicate that his visual

20  impairment is so severe that it is disabling.  This conclusion is further supported by the objective

21  evidence.  According to plaintiff's ophthalmological examination in May 2004, the examining

22  physician remarked that plaintiff's condition was stable, and that he only had visual limitations due

23  to "less than perfect" visual acuity.[5] [AR at 18, 427-31.]

24         In determining plaintiff's residual functional capacity, the ALJ also accepted plaintiff's

25  testimony that he suffers from numbness in his feet that occurs around every six months,

26

27  _____

28      [5]   The consultative examiner found that plaintiff has 20/50 vision in his right eye and 20/60
    vision in his left eye. [AR at 431.]

7

numbness in his hands that occurs only during cold weather, and occasional swelling in his feet. Given the infrequent nature of these symptoms, however, plaintiff has not established how they warrant more restrictive limitations, or otherwise prevent him from working. Nor did the ALJ reject plaintiff's testimony that he suffers from kidney pain that flares up approximately every three months and lasts for two to three weeks. [AR at 482.] Again, plaintiff has not shown how these episodic bouts of pain prevent him from maintaining employment. In short, he has not made the requisite demonstration that these symptoms, all of which occur on an infrequent basis, could be expected to cause his diabetes to reach disabling severity for a continuous period of at least twelve months. See 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

The Court further observes that, although the ALJ did not reject plaintiff's symptom testimony at the hearing, the ALJ did note other lay evidence in the record -- consisting of plaintiff's daily activities questionnaire, a third party questionnaire, and the observations of claims representatives -- that supports the conclusion that plaintiff is capable of light work. For example, when discussing plaintiff's symptom testimony, the ALJ took note that in 1999, plaintiff reported to a claims representative that he had poor medical compliance but felt "fine" when he did follow his insulin regimen, that his diabetes did not affect his daily activities, and that he worked out at the gym daily. [AR at 19, 90-91.] In plaintiff's daily activities questionnaire, also completed in 1999, he reported no significant limitations; activities included household chores, school and going to the mall. [AR at 19, 113-18.] Likewise, the third party questionnaire filled out by plaintiff's sister in 1999 also reflects no serious complications, but rather a range of activities including school attendance, cooking and shopping. [AR at 19, 119-24.] While this evidence dates back several years, plaintiff has not demonstrated that, with the exception of his vision problems, his physical symptoms have increased in severity to the point they are disabling. Indeed, and as also noted by the ALJ, plaintiff testified that he was kicked out of school in May, 2003, for misconduct; he did not leave school for any health-related issues. [AR at 19, 475-76.] The ALJ properly relied on the above statements as further evidence of plaintiff's level of functioning.

For the foregoing reasons, plaintiff has failed to establish that the ALJ improperly rejected his hearing testimony. Nor has plaintiff demonstrated that his subjective allegations reflect

8

limitations that are incompatible with the residual functional capacity set forth in the hearing decision.  Accordingly, the ALJ's decision is affirmed.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED: September 28, 2006                              _____/S/_____
                                                       PAUL L. ABRAMS
                                                       UNITED STATES MAGISTRATE JUDGE